**In re David G. SUMNER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 93–BG–1007.**

District of Columbia Court of Appeals.

Submitted Sept. 19, 1995.
Decided Oct. 19, 1995.

Before WAGNER, Chief Judge, and RUIZ, Associate Judge and PRYOR, Senior Judge.

PER CURIAM:

In this disciplinary proceeding, the Board on Professional Responsibility (the Board) found that respondent, David G. Sumner, had engaged in conduct which violated the following six Rules of Professional Conduct: Rules 1.1(a) and 1.1(b) (failure to provide competent representation and representation commensurate with that generally provided by lawyers in similar matters); Rule 1.4(a) (failure to keep client reasonably informed of status of a matter); Rule 1.16(d) (failure to return papers to which client is entitled and to refund fees); Rule 1.5(b) (failure to set forth basis for fee in writing); and Rule 4.1(a) (making a false statement of material fact to a third person). The Board agreed with the Hearing Committee's findings that respondent violated the referenced rules and recommended a sanction of a thirty-day suspension. Neither respondent nor Bar Counsel filed exceptions to the Board's report and recommendation. Substantially for the reasons set forth in the Board's report, we adopt its recommendation. The report is reproduced at the end of this opinion.[1]

Accordingly, it hereby is ordered that respondent, David G. Sumner, be suspended from the practice of law in the District of Columbia for a period of thirty (30) days effective thirty days after the date of entry of this order. *See* D.C.Bar R. XI § 14(f). It is

FURTHER ORDERED, that respondent shall comply with the provisions of D.C.Bar R. XI § 14(g).

*So Ordered.*

ATTACHMENT

**DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY**

**In the Matter of**

**David G. Sumner, Esq.**

**Docket No. 98–93**

**REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY**

Hearing Committee Number Nine concluded after a one-day hearing that Respondent

---

1. In disciplinary proceedings, this court will adopt the Board's recommended disposition "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C.Bar R. XI, § 9(g)(1); *accord, In re Steele*, 630 A.2d 196, 199 (D.C.1993).

violated six disciplinary rule provisions in the course of his abandonment of a client, Charles Marshall, who retained him to pursue post-conviction relief and an appeal to the District of Columbia Court of Appeals from a felony conviction. The Hearing Committee found violations of Rule of Professional Conduct 1.1(a) and 1.1(b) for failure to provide competent representation; Rule 1.4(a) for failure to keep his client reasonably informed; Rule 1.16(d) for Respondent's failure to surrender property or refund fees of the client; Rule 1.5(b) for failing to set forth the basis for his fee in writing; and Rule 4.1(a) for making a false statement to a third party.[2] Respondent's arguments before the Board focus heavily on the Hearing Committee's conclusions as to the Rule 1.16(d) and 4.1(a) violations. Our disposition of those issues is important for our recommended sanction because they potentially add factors beyond a first neglect-type violation, which ordinarily would not warrant a period of suspension.

### Factual Background

Respondent graduated from law school in 1985 and became a member of the District of Columbia Bar in that year. Respondent held a series of jobs in respected firms where his performance apparently was impaired by serious episodes of depression, including a period of depression that required hospitalization in 1987. By 1992, when he was retained by Charles Marshall, Respondent was practicing on his own, without an office or staff. He had very slight experience in criminal practice and no criminal appellate experience.

Charles Marshall was convicted in Superior Court of possession of narcotics with intent to distribute in spring of 1992. Although Mr. Marshall had counsel appointed to represent him at trial, he retained Respondent before sentencing to represent him for post-conviction relief and on appeal. H.C.R.

at 1.[3] Mr. Marshall was incarcerated when he retained Respondent and at all relevant times thereafter. H.C.R. 1–2. Mr. Marshall and Respondent met through Mr. Marshall's stepbrother, Thereon Brown, and Mr. Brown's mother, Diane Wingfield. H.C.R. at 2.

Mr. Marshall designated his girlfriend, Tomika Bell, as his agent to communicate with Respondent and to pay Respondent's fees. *Id.* Mr. Marshall talked daily to Ms. Bell. *Id.* Ms. Bell and Respondent discussed Respondent's fee before he was retained. Respondent told both Ms. Bell and Mr. Marshall that his fee would be $500 to $600. *Id.* Respondent explained that this was a low fee, because he had no experience in criminal appellate practice and Mr. Marshall's case would provide him an opportunity to gain some experience. Tr. 61. Mr. Marshall hired Respondent despite his lack of experience because he trusted and felt comfortable with him. H.C.R. at 2. Respondent did not provide Mr. Marshall or Ms. Bell with a written fee agreement. *Id.*

Ms. Bell paid Respondent, by check, a total of $350 from April through July of 1992. She believed those payments were made toward the quoted fee of $500–$600, and that Respondent would ask the Court to assume costs such as docket fees and transcripts. H.C.R. 2–3.

On the date of Mr. Marshall's sentencing, Respondent filed a motion in Superior Court for leave to proceed *in forma pauperis* for the purpose of pursuing a motion for new trial and, if necessary, an appeal. The Court did not act on the motion, but orally suggested that Respondent pursue certification under the Criminal Justice Act (CJA). Respondent never requested CJA certification or filed a new trial motion. Although Respondent was not trial counsel, he failed to seek an extension of time to file a new trial motion in order to permit him to order and review the trial transcript.

---

**2.** The Hearing Committee concluded that Respondent's conduct did not show that he intentionally prejudiced or damaged his client, as Bar Counsel alleged in counts charging violations of Rules 1.3(a), 1.3(b)(1), and 1.3(b)(2). Bar Counsel does not take exception here to that conclusion.

**3.** The Hearing Committee Report is referred to as "H.C.R."; the transcript of the hearing on January 5, 1994 is referred to as "Tr."

Respondent instead filed a timely notice of appeal that the Superior Court transmitted to the District of Columbia Court of Appeals on June 9, 1992 (*U.S. v. Marshall*, Docket No. 92–CF–000679). H.C.R. at 3. Respondent failed to note on the notice of appeal that Mr. Marshall had been appointed counsel under the Criminal Justice Act at trial.

Ms. Bell spoke regularly by telephone with Respondent during May, June, and July of 1992, with Mr. Marshall occasionally included in a three-way conversation. The Hearing Committee found that "[d]uring one of the conversations, Respondent informed Ms. Bell that he had ordered the transcripts for the case." H.C.R. at 3–4.

Ms. Bell began having trouble reaching Respondent in August 1992. Through Ms. Wingfield, Ms. Bell was told that Respondent was in the hospital. Respondent finally called Ms. Bell in late September or early October of 1992. Respondent told Ms. Bell that he was under a lot of stress, but that he would continue to represent Mr. Marshall. When Ms. Bell asked Respondent whether he could handle the situation, he repeatedly assured her that he could. The Hearing Committee specifically found that "Respondent informed Ms. Bell that he had possession of the transcripts of the case and that a briefing date had been scheduled by the Court of Appeals." H.C.R. at 4. Respondent's telephone was disconnected thereafter and Ms. Bell was unable to reach Respondent further until she filed disciplinary charges.

Meanwhile, on September 25, 1992, the District of Columbia Court of Appeals ordered Respondent to file a brief on behalf of Mr. Marshall, that would be due 40 days from the date of the order. Respondent received the order and made Ms. Bell aware of it. When Ms. Bell could not reach Respondent by the time the brief was due, she went to the Court of Appeals herself to inquire about the status of the case. She was told that the filing date had passed, that Respondent had not filed a brief, and that he would be sent another letter.

On November 13, 1992, Respondent was ordered to file the brief, with a motion for leave to file out of time, within 15 days of the order. Respondent was warned that failure to respond to the order might result in dismissal of the case. The order was mailed, as was the previous order, to the address provided by Respondent on his notice of appeal.

On November 16, 1992, Ms. Bell typed a letter for Mr. Marshall's signature, requesting that the Court of Appeals appoint an attorney to assist him. The letter was filed with the Court of Appeals on November 17, 1992.

On approximately November 28, 1992, the second deadline date, Ms. Bell telephoned the Court of Appeals to ask if the brief had been filed. She was told that it had not been filed. On December 9, 1992, the Court of Appeals forwarded a copy of Mr. Marshall's November 17, 1992 letter to Respondent and requested that he notify the Court of Appeals within 10 days whether the situation had been resolved. Respondent did not respond to the letter. On January 22, 1993, the Court of Appeals issued an order striking Respondent's appearance and appointing new counsel to represent Mr. Marshall. The Court of Appeals ordered Respondent to transmit all documents pertaining to the appeal to Mr. Marshall's new counsel "forthwith." H.C.R. at 6. Respondent claims that he did not receive the order, although he admits that he failed to provide the Court with a new address when he moved from the address that he originally provided on the notice of appeal. Respondent did not comply with that order and provide his file to successor counsel.

Respondent never ordered the transcripts of Mr. Marshall's trial. As a result of Respondent's failure to attend to Mr. Marshall's appeal, the case could not proceed for approximately six months. Id. Respondent did not refund any of the $350 to Ms. Bell or Mr. Marshall until November 1993, after Ms. Bell initiated this disciplinary proceeding.

### Disciplinary Violations

There can be no doubt that Respondent's abandonment of Mr. Marshall, coupled with his lack of experience on criminal appeals

and the absence of efforts to compensate for his lack of experience, breached Respondent's obligations to provide "competent representation to a client" and to serve a client "with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters," in violation of Rules 1.1(a) and 1.1(b). Respondent did nothing to perfect the appeal he noted, although he was aware of the initial court deadlines and the risk that the appeal would be dismissed if it were not pursued with timely filings or motions for additional time. Counsel's dropping of the ball in a litigation matter through unexcused failure to make required filings, caused by his lack of competence in such matters, unquestionably violates Rules 1.1(a) and 1.1(b). *See In re Spaulding,* 635 A.2d 343 (D.C.1993) (violation of DR 6–101(A)(1) found by respondent's failure to comply with judicially determined discovery deadlines, caused to some degree by his lack of experience and competence in federal court employment cases).

Respondent also does not seriously question that he violated Rule 1.4(a) by failing to keep his client informed of how he could be reached, and that Court deadlines had been set that he would not meet. While the appeal process in many instances may not require a client to be informed of each development in the process of perfecting the appeal, surely an attorney has an obligation to alert the client as to whether he has filed a brief that is required in order to avoid jeopardizing the appeal itself. It is uncontested that after reassuring Ms. Bell in late September or early October 1992 that he would pursue the appeal, and that the Court had set a deadline for filing the brief, he provided no further information. This lapse violates Rule 1.4(a).

The violation of Rule 1.16(d) also is not seriously contested before the Board. Respondent admitted that he did not provide files to successor counsel or refund the fee until months after he was replaced by the Court of Appeals, after these proceedings began. Tr. 269.

There also is no dispute that Respondent did not provide a written fee agreement as required by Rule 1.5(b). Respondent contended before the Hearing Committee that he was *pro bono* counsel for Mr. Marshall and that the $350 he was paid by Ms. Bell was for expenses. The Hearing Committee believed Ms. Bell and Mr. Marshall's version of events, which was that the $350 was payment toward Respondent's fee. H.C.R. 11. That tends to be corroborated by that fact that at no time during Respondent's representation were there $350 in costs, and yet Respondent did not return the balance when the Court replaced him as Respondent's counsel. *Id.*

Respondent's challenges before the Board are, rather, to the Hearing Committee's conclusion that he misrepresented to Ms. Bell that he had ordered, and received, the trial transcript. Such misrepresentations would be significant because they allegedly came at a time and in a situation designed to placate and mislead a persistent advocate of Mr. Marshall's interests who sought to protect him from precisely the harm that he suffered because of Respondent's neglect.

The record support the Hearing Committee's conclusion that the misrepresentations occurred. Ms. Bell testified that Respondent told her that "he had the transcript and he was ready." Tr. 74. Mr. Marshall corroborated that Respondent "said he ha[d] received the transcript, that he was going through the transcript at that period of time." Tr. 26. The Hearing Committee believed that testimony, H.C.R. at 12, and pursuant to *In re Micheel,* 610 A.2d 231, 234 (D.C.1992), we should defer to that conclusion. We note that the same arguments—principally that Mr. Marshall's testimony lacked credibility because he gave disingenuous answers to questions about his prior experience in the criminal justice system—were made to the Hearing Committee and implicitly rejected.

Because Respondent's challenge here rests so heavily on an attack on Mr. Marshall's credibility, we observe that the Hearing Committee's conclusion is supported by the record even aside from its assessment of credibility. Respondent's testimony on whether he ever stated to Ms. Bell or Mr. Marshall that he had the transcript was

somewhat faltering. While he ultimately denied that he made such statements, his first words when he was asked the question were: "Not to the· extent that she said." Tr. 258. Even more significant are the overall circumstances of the conversations between Respondent and Ms. Bell. The record is very clear that Ms. Bell was assertive in questioning Respondent and assuring herself that the necessary steps to pursue the appeal had been taken. Respondent and Ms. Bell agree that, before the disputed conversations, he had educated her on the steps necessary to complete an appeal, including the need to acquire the transcript. Tr. 70; 308–09. Given her persistence, it is logical to conclude that she pressed him about each step in the process, yet she did not contact the Court of Appeals until the brief was due. It is a logical inference from this sequence of events that Respondent had given her some comfort that he had ordered and received transcripts. Accordingly, we accept the Hearing Committee's conclusion that Respondent violated Rule 4.1(a).

### Recommended Sanction

A period of suspension ordinarily is not imposed for a first disciplinary violation in the nature of neglect. *In re Reback*, 513 A.2d 226, 232 (D.C.1986) *(en banc )*.

Public censure has been the sanction imposed by the Court in other cases where respondents who had no prior discipline failed to make filings in court and then ignored court orders, where there were not other substantial or intentional violations in the course of the misconduct. *See In re Shaklee*, No. 84–348 (July 17, 1984) (public censure where respondent, court-appointed counsel for indigent defendant on appeal, ignored order of appointment as well as two other orders relating to failure to file a brief and order to show cause why his conduct should not be referred to Bar Counsel); *see also In re Robertson*, 608 A.2d 756 (D.C. 1992) (public censure as reciprocal discipline for neglect and conduct prejudicial to the administration of justice for failing to file

brief and respond to court orders, where there were mitigating factors). In a case very similar to this one, where an attorney failed to file a brief in a criminal appeal in this Court, and also was less than honest in explaining his reasons, public censure was recommended by the Board and ordered by the Court. *In re Margulies*, No. 88–1032 (D.C.App. Jan. 26, 1989). The issue here is whether the collateral violations also found in connection with Respondent's representation of Mr. Marshall—misrepresentation, failure to provide a written fee agreement, and failure to return files and fees—in combination with the Rule 1.1 violations, warrant a brief suspension. While the issue is close, we conclude that they do.

Respondent's abandonment of Mr. Marshall was complete. It was only due to Ms. Bell's vigilance that his opportunity to appeal his conviction was preserved. For Respondent to lead clients this dependent on him off the trail of his own neglect is serious. Respondent did not let the Court or his client know his whereabouts as of fall of 1992. While we accept, as did the Hearing Committee, that Respondent was in an episode of depression when he lapsed in his obligation to Mr. Marshall,[4] we weigh that mitigating factor against the prejudice to the client and aggravation of delays in the criminal justice system caused by this type of conduct. We conclude and recommend that a thirty-day period of suspension is warranted by Respondent's misconduct. While not every first-time case of a neglect-type violation coupled with misrepresentation or similar violations has resulted in suspension, a brief suspension is within the range established by the Court. *See In Re Dory*, 528 A.2d 1247 (D.C.1987) (neglect and intentional failure to pursue client's objectives based on failure to file motion for new trial or notice of appeal). *In re Ontell*, 593 A.2d 1038, 1041 (D.C.1991) is instructive. There the Court, citing *Dory*, stated: "Neglect and failure to seek the lawful objectives of a single client have supported a suspension of thirty days on occasion." The Court then cited a series of cases in which longer suspensions were ordered, even for neglect violations involving a single

---

4. Respondent does not claim mitigation based on depression as provided by *In re Kersey*, 520 A.2d 321 (D.C.1987) and *In re Peek*, 565 A.2d 627 (D.C.1989).

client, where neglect was coupled with other violations, including misrepresentation. *See In re Drury,* No. 89–822 (D.C.1990); *In re Peek,* 565 A.2d 627, 634 (D.C.1989); *In re Landesberg,* 518 A.2d 96, 97 (D.C.1986).

The misrepresentation here also is more serious than that involved in *Margulies,* since the misrepresentation here was specifically designed to lull a client while Respondent was in the process of abandoning his efforts on the client's behalf. We are not persuaded by Respondent's efforts to distinguish the second *Dory* case, *In re Dory,* 552 A.2d 518 (D.C.1989), on grounds that the neglect there lasted for three years. The neglect here was of brief duration only because of Ms. Bell's vigilance and the fact that the Court's processes would not allow Respondent's lapse to be protracted once the notice of appeal was filed. Respondent should get no benefit from an argument that the period of neglect was brief, when he was not the one who acted to cure it.

We conclude that a thirty-day suspension is at the outer range of an appropriate sanction here, but is warranted by the seriousness of the misconduct and the accompanying violations of other disciplinary rules.

**BOARD ON PROFESSIONAL RESPONSIBILITY**

By ———————
PATRICIA A. BRANNAN

Dated: January ——, 1995

All members of the Board concur in this Report and Recommendation except Mr. Fox and Ms. Zumas, who did not participate.