**In re Alan C. DREW, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 96–BG–1683.

District of Columbia Court of Appeals.

Submitted March 27, 1997.
Decided May 8, 1997.

Before STEADMAN and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

**PER CURIAM:**

Respondent was charged with violating thirteen ethical rules while representing two defendants in separate criminal cases. In the first case, respondent failed to note an appeal when he knew that his client wished to appeal his conviction. In the second case, respondent failed to both note an appeal and file a motion to modify his client's sentence.

The hearing committee found by clear and convincing evidence that respondent had violated two of the rules charged. Specifically, the committee concluded that respondent violated, in the first case, D.C. Rule of Professional Conduct 1.5(b) (requiring a lawyer to communicate to the client the basis or rate of the fee to be charged), and in both cases, Rule 1.1(b) (providing a lawyer shall serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters). However, the committee refused to make findings as to whether the other rules were violated because it thought the basis for each of those charges was "essentially duplicative" of the basis for the charge of violating Rule 1.1(b). In addition, the committee determined that in both cases the bar counsel made no showing that respondent lacked the requisite legal knowledge and skill to represent the two clients, and thus found that Rule 1.1(a) had not been violated.

We accept the Board's findings of fact as supported by substantial evidence. We attach the Board's Report and Recommendation hereto and incorporate it by reference. As the report reflects, the Board on Professional Responsibility agrees with the committee as to its conclusions on Rules 1.5(b) and 1.1(b). However, as to the remaining ten charges, the Board disagrees with the committee. We agree with the Board that violations of Rule 1.1(a) were established by clear and convincing evidence. Moreover, we agree with the Board's determination that respondent violated the eight charges that the committee chose not to consider.

---

The Board recommends that respondent be sanctioned with a sixty-day suspension. The Board cites respondent's failure to present any evidence in mitigation, three previous informal admonitions in similar cases, and respondent's attitude. Where, as here, respondent does not contest the proposed sanction, we have held that this court will give more deference to the Board's recommendation. *In re Goldsborough*, 654 A.2d 1285, 1288 (D.C.1995). Thus, we accept the Board's recommendation that respondent be suspended for sixty days with the suspension to run consecutive to any sanction imposed in *In re Drew*, No. 96–BG–160. It is

ORDERED that pursuant to D.C.Code § 11–2502 (1995 Repl.), respondent, Alan C. Drew, is suspended from the practice of law in the District of Columbia for sixty days, consecutive to the sanction imposed by this court in *In re Drew*, No. 96–BG–160. Respondent's attention is directed to the provisions of District of Columbia Bar Rule XI, Sec. 14 governing disbarred and suspended attorneys.

*So ordered.*

APPENDIX

DISTRICT OF COLUMBIA
COURT OF APPEALS

BOARD ON PROFESSIONAL
RESPONSIBILITY

In the Matter of

ALAN C. DREW, ESQ.,

Respondent.

Docket No. 228-94

*REPORT AND RECOMMENDATION OF
THE BOARD ON PROFESSIONAL
RESPONSIBILITY*

This case involves the representation by Respondent of two defendants in separate criminal cases, Antonio Gladden and James Brown. Thirteen ethical rules violations were charged by Bar Counsel.

Respondent was admitted to practice in the District of Columbia in 1978. His office is in Upper Marlboro, Maryland.

APPENDIX—Continued

*Background Facts Relating
To Antonio Gladden*

In March of 1993, Respondent was retained to represent Gladden in a criminal case pending in the Superior Court. Gladden was 21 years of age at the time. He had no criminal record. The record in this matter indicates that he was unfamiliar with criminal procedures. (See, *e.g.,* BX 4)

Respondent failed to provide Gladden with a written disclosure of the basis or rate of his fee, as required by Rule 1.5(b) of the D.C. Rules of Professional Conduct.

The Superior Court trial resulted in Gladden's conviction. He was sentenced to four years incarceration under the Youth Rehabilitation Act. Three days after sentencing, Gladden told Respondent that he wished to appeal from his conviction. There was no dispute that Respondent knew Gladden wished to appeal. (Tr. 117–118)

Respondent discussed with Gladden's mother his retainer for representing Gladden in the appeal. She told him at first to "go ahead" with the appeal. (Tr. 14) Shortly thereafter, she informed Respondent that she could not obtain the necessary funds for the retainer. Respondent told her that, nonetheless, he would "go ahead and put the appeal in." Gladden's mother gave that information to Gladden. (Tr. 15) Gladden testified that, after his sentencing, he telephoned Respondent about an appeal, and that Respondent told him he would "file a motion" concerning his appeal. .(Tr. 118)

On the basis of Respondent's statements to her, Gladden's mother believed that the notice of appeal had been filed. She so informed Gladden. (Tr. 15)

In fact, although Respondent knew that Gladden wished to appeal his conviction (Tr. 93), he admitted that he "intentionally failed to note the appeal." (Tr. 90) He also admitted that he failed to inform his client in writing "where to go and how to get an attorney." (Tr. 91) Instead, he told Gladden that "if [he] could get downtown, and ... could pick up copies of the [*forma pauperis* ] papers for him, [he] would be glad to drop

them off. As it was, [he] didn't get to it." (Tr. 92)

Respondent's excuse for his inaction was that he did not wish to file an appeal in a case where the client was not going to pay him. (Tr. 95) Respondent did not believe it was his responsibility to give such assistance to his client. (Tr. 92–93)

After the time for filing the appeal had expired, Gladden complained to Bar Counsel. Thereafter, a Public Defender Service lawyer was able to get the sentence vacated. The original sentence was then reimposed, and a timely notice of appeal was filed by the PDS lawyer. (BX 9–9)

### Bar Counsel's Charges

Bar Counsel charged Respondent with the following rules violations:

Rule 1.5(b), which requires a lawyer to communicate to the client the basis or rate of the fee to be charged.

Rule 1.1(a), which provides that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Rule 1.1(b), which provides that a lawyer shall serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters.

Rule 1.3(a), which requires a lawyer to represent a client zealously and diligently.

Rule 1.3(b)(1), which prohibits a lawyer from intentionally failing to advance the legal interests of his client.

Rule 1.16(d), which provides that, upon terminating his services, a lawyer shall take timely steps to the extent reasonably practicable to protect the client's interests.

Rule 8.4(d), which provides that it is professional misconduct for a lawyer to engage in conduct that seriously interferes with the administration of justice.

### Background Facts Relating to James Brown

Respondent was retained by James Brown in April of 1991 to defend him in a criminal case in the Superior Court. Thereafter, in June of 1991, Respondent was retained by Brown to defend him in a separate criminal case pending in the District Court.

Brown was tried and found guilty in both cases. He was sentenced to 87 months incarceration in the District Court case. Respondent represented Brown on the appeal from the District Court conviction. That conviction was affirmed. Thereafter, the Superior Court judge sentenced Brown to from three to nine years of incarceration, to run consecutively with the District Court sentence.

Brown informed Respondent that he wished to appeal from his Superior Court conviction, despite the denial of his District Court appeal. (Tr. 31) He also informed Respondent that he wished to file a motion to modify the Superior Court's sentence, so as to have that sentence run concurrently with the District Court's sentence. (Tr. 31)

Brown testified that, immediately after his conviction, he discussed with Respondent his desire to appeal his Superior Court conviction, and to move to modify the Superior Court sentence. (Tr. 31–32, 46–47) Brown also testified that Respondent agreed to file the appeal and motion to modify the sentence. (Tr. 31)

Respondent denied that he talked to Brown about appealing the Superior Court conviction. However, he admitted that Brown did not tell him not to appeal. (Tr. 89), and also admitted that Brown was "definitely interested in appealing his case." (Tr. 89–90)

Before the time for appealing from the Superior Court conviction expired, Brown telephoned Respondent in May of 1993 from the Federal Correctional Institution in Danbury, Connecticut, and requested information regarding his appeal and the motion to modify the sentence. Respondent told Brown that the appeal would take time, and that the motion already had been filed. (Tr. 32–33, 39)

On November 17, 1993, after he had been transferred to the Federal Correctional Facility in Ray Brook, N.Y., Brown mailed Respondent a certified letter, in which he asked Respondent to send him documents relating to his case. (BX 16; Tr. 33) Respondent did not respond to the request. (Tr. 33)

On March 23, 1994, Brown wrote the Clerk of the Superior Court, requesting "copies of any appeals file on" his case. (BX 15) In response to that letter, Brown was told that his case had not been appealed, and that no motion to alter the sentence had been filed. (Tr. 34–35).

Also, on March 23, 1994, Brown wrote Respondent, and requested copies of the briefs, opinions, and other papers that may have been in the record of the case. (BX 17) Respondent failed to respond to Brown's letter, nor did he send the requested materials. (Tr. 34)

Brown telephoned Respondent after he arrived at Ray Brook to let him know he had been moved. Respondent told Brown he would "get back" to him, but he never did. Brown telephoned Respondent again after a month or two, and told Respondent he would file his own motion to reduce the sentence. (Tr. 40–41).

Brown's complaint to Bar Counsel was received on May 2, 1994. (BX 10)

After Brown was transferred from Ray Brook to Allenwood in June of 1994, Brown telephoned Respondent, and asked for his transcripts. Respondent told him they were "on the way," but, because Brown had complained to Bar Counsel, Respondent no longer wanted to speak to him. (Tr. 40)

Brown filed a motion with the Superior Court in attempt to regain his right to appeal, and also a motion to reduce the sentence. Those motions had not been ruled upon as of the date of the hearing. (Tr. 41–42)

### Bar Counsel's Charges

Bar Counsel charged Respondent with violations of the following rules:

Rules 1.1(a), which provides that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Rule 1.1(b), which provides that a lawyer shall serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters.

Rule 1.3(a), which requires a lawyer to represent his client zealously and diligently.

Rule 1.3(b)(1) which provides that a lawyer shall not intentionally fail to seek the lawful objectives of his client.

Rule 8.4(d), which provides that it is professional misconduct for a lawyer to engage in conduct that seriously interferes with the administration of justice.

Rule 1.16(d) which, in part, provides that, in connection with termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests.

### Recommendations of Hearing Committee Antonio Gladden Case

The matter was heard by Hearing Committee No. 3 on March 8, 1995. Its report was issued on September 10, 1996.

Rule 1.5(b): Respondent argued that, because he was ignorant of the rule requiring a written statement of the basis or rate of the fee to be charged, his failure to provide such a statement should be excused on the ground of "no harm-no foul." However, the Committee disagreed, and found that a violation of Rule 1.5(b) was established by clear and convincing evidence.

Rule 1.1(b): The Committee concluded that Bar Counsel established by clear and convincing evidence that Respondent violated this rule which requires a lawyer to serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters.

Rule 1.1(a): The Committee determined that Bar Counsel made no showing that Respondent lacked the requisite legal knowledge and skill to represent Gladden in his appeal, and, accordingly, found that this rule had not been violated.

Rules 1.3(a), 1.3(b)(1), 8.4(d), and 1.16(d): The Committee refused to make findings as to whether these rules were violated because, in its view, the basis for each of those charges was "essentially duplicative" of the basis for the charge of violating Rule 1.1(b),

*James Brown Case*

Rule 1.1(b): The Committee found that Bar Counsel established with clear and convincing evidence that Respondent violated this rule in connection with his representation of Brown.

Rule 1.1(a): The Committee concluded that Bar Counsel made no showing that Respondent lacked the requisite legal knowledge and skill to represent Brown in his appeal, and, accordingly, found that this rule had not been violated.

Rules 1.3(a), 1.3(b)(1), 8.4(d), and 1.16(d): The Committee refused to make findings as to whether these rules were violated because, in its view, the basis for each of those charges was "essentially duplicative" of the basis for the charge of violating Rule 1.1(b).

No mitigation evidence was offered by Respondent. At the conclusion of the hearing, Bar Counsel referred to three previous informal admonitions as being aggravating circumstances.

The Committee recommended a 30–day suspension. Its rationale was that, although Respondent's neglect was serious, and even though he has received three informal admonitions during his 18–years of practice in the District of Columbia, each of the three violations found by the Committee related to the "same element of neglect." Moreover, there was no finding of dishonesty.

### Discussion

The Board agrees with the Committee that Respondent violated Rules 1.5(b) and 1.1(b) in connection with his representation of Gladden. The Board also agrees that Respondent violated Rule 1.1(b) in connection with his representation of Brown.

Respondent's violation of Rule 1.5(b) in his representation of Gladden was virtually conceded by Respondent, and needs no further discussion.

With respect to Rule 1.1(b), both Gladden and his mother testified that Respondent told them that the appeal had been filed. Respondent testified that he never told Gladden that he would file an appeal. (Tr. 76, 93–94)

Likewise, Brown testified that he told Respondent he wished to appeal from the Superior Court's conviction, and also file a motion to alter the sentence, so that it would run concurrently with the District Court's sentence. Respondent denied that he even discussed an appeal with Brown, although he knew that Brown was "definitely interested in appealing his case." (Tr. 89–90)

We disagree with Respondent's argument that the evidence on this issue is "in equipoise" because of the conflicting testimony, and, therefore, the violations were not established by clear and convincing evidence. (Resp.Memo., p. 2) As noted by the District of Columbia Court of Appeals in *In re Ray*, 675 A.2d 1381, 1387 (D.C.1996), the hearing committee is "the only decision-maker which had the opportunity to observe the witnesses and assess their demeanor." And, in *In re Micheel*, 610 A.2d 231, 234 (D.C.1992), the Court held that the Board "must defer to the 'subsidiary findings of basic facts,' which include such things as credibility determinations made by the . . . fact finding body (the hearing committee)."

The Committee disbelieved Respondent's testimony, and believed the testimony of his two clients and Gladden's mother. There is no basis in the record for disagreeing with the Committee. Moreover, all the surrounding circumstances set forth in the record support the testimony of Brown, Gladden, and Gladden's mother, and refute Respondent's testimony.

There can be no doubt that, in refusing to file notices of appeal Respondent fell far short of serving his clients with the skill and care commensurate with that generally afforded clients by other lawyers in similar matters. And, as Bar Counsel pointed out in his brief to the Committee, "it is the trial attorney's responsibility to note an appeal for a criminal defendant who so requests." (Bar

Counsel Br. at 8). Bar Counsel also pointed out that the District of Columbia Court of Appeals has held that " 'failure of counsel to file a timely notice of appeal when his client instructs him to do so amounts to ineffective assistance of counsel.' *Samuels v. United States*, 435 A.2d 392, 395 (D.C.1981)." *(Ibid)*.

Bar Counsel also referred to the decision of the Supreme Court of the United States in *Anders v. State of California*, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399–1400, 18 L.Ed.2d 493 (1967), which held that a defendant has the right to "a full appellate review" even if the appellate attorney believes the appeal has no merit. (Bar Counsel Br. at 10–11)

Accordingly, we find that the violations of Rule 1.1(b) in connection with Respondent's representation of both Gladden and Brown were established by clear and convincing evidence.

Although we agree with the Committee's findings and recommendations with respect to the foregoing charges, we disagree with its disposition of the ten remaining charges brought by Bar Counsel.

The charges that Respondent violated Rule 1.1(a) (a lawyer shall provide competent representation to a client) in connection with his representation of both Gladden and Brown were rejected because the Committee determined that Bar Counsel made no showing that Respondent lacked the requisite legal knowledge and skill to represent Gladden and Brown in their appeals. The Committee decided not to consider whether or not the evidence supported the remaining eight charges for the reason that the facts relating to those charges were "duplicative" of the facts upon which the charged violations of Rule 1.1(b) were based.

*Rule 1.1(a)*

This rule states that a lawyer shall *provide* competent representation to a client. That he may have the requisite skill and knowledge, as found by the Committee, and yet deliberately refuse to provide competent representation *cannot*, in our view, allow him to escape his obligation under Rule 1.1(a). Our conclusion is supported by Comment 5 to the rule which states, in part:

Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation, and *continuing* attention to the needs of the representation *to assure that there is no neglect of such needs*. (Emphasis added)

As noted by Bar Counsel, violations of both Rule 1.1(a) and Rule 1.1(b) were found in *In re Sumner*, 665 A.2d 986 (D.C.1995), when the attorney "dropped the ball" by failing to perfect an appeal he had noted. (Bar Counsel Br. at 15)

Although, as the Court of Appeals held in *Micheel, supra*, the Board must defer to the Committee's credibility determinations, it "owes no deference to the committee's determination of 'ultimate facts,' which are really conclusions of law." (610 A.2d at 234)

We respectfully disagree with the Committee's ultimate finding that the evidence relating to Respondent's representation of Gladden and Brown did not establish violations of Rule 1.1(a). Rather, we find that such violations were established by clear and convincing evidence.

*Remaining Eight Bar Counsel Charges*

We do not concur with the Committee's decision not to consider whether the evidence established violations by Respondent of the eight remaining charges for the reason that the underlying facts relating to those charges were "duplicative" of facts supporting violations of Rule 1.1(b). There have been numerous instances where hearing committees, the Board, and the Court of Appeals have found violations of multiple rules based upon the same conduct of the respondent. *See, e.g., In re Dietz*, 633 A.2d 850 (D.C.1993), where the Court of Appeals found that, in neglecting his client's divorce action, the respondent violated Rules 1.3(a), 1.3(b)(1), 1.3(c), 1.4(a), 1.15(d), and 8.4 of the D.C. Rules of Professional Conduct. We believe that the appropriate manner for a hearing committee to consider multiple violations based upon a single set of facts is to determine the weight, if any, that should be given

to those circumstances in recommending the sanction to be imposed.

Since the Committee has not made separate findings with respect to the remaining eight charges, it is incumbent upon the Board to determine, on the basis of the record, whether or not any or all of them were established by clear and convincing evidence.

*Rule 1.3(a)(Failure to represent client zealously and diligently)*

By his deliberate failure to follow the instructions of either Gladden or Brown regarding the appeal of their convictions, and by failing to file the motion to alter the Superior Court's sentence on behalf of Brown, Respondent clearly violated Rule 1.3(a) in connection with his representation of each of those clients. As noted by Bar Counsel, "[t]he Rule does not require proof of intent, but only that the attorney has not taken action necessary to further the client's case, whether or not legal prejudice arises from such inaction. *In re Dietz*, 633 A.2d 850 (D.C.1993). *See also In re Spaulding*, 635 A.2d 343 (D.C.1993)." (Bar Counsel Br. at 15–16) Respondent's conduct on behalf of both of his clients was the exact opposite of zealous and diligent representation.

*Rule 1.3(b)(1)(Intentionally failing to seek the lawful objectives of a client)*

The objectives of Gladding and Brown were to appeal from their convictions. In Brown's case, there was an additional objective to obtain a modification of the Superior Court sentence so that it would run concurrently, instead of consecutively, with the sentence imposed by the District Court. Those objectives were both lawful and reasonable. And yet, admittedly, Respondent intentionally refused and failed to seek those legitimate and essential objectives. Accordingly, the conclusion is inescapable that Respondent violated this rule in connection with the representation of each of his clients.

*Rule 1.16(d)(Failing to take timely steps to protect client's interest)*

This rule requires a lawyer, in connection with the termination of his representation, to take timely steps to the extent reasonably practicable to protect a client's interests. In both instances, Respondent took no steps to protect his clients' obvious interest in appealing from their convictions, and, in Brown's case also to obtain a modification of the Superior Court's sentence.

Accordingly, the undisputed evidence shows clearly and convincingly that Respondent violated Rule 1.16(d) in connection with his representation of both Gladding and Brown.

*Rule 8.4(d)(Conduct prejudicial to the administration of justice)*

We agree with Bar Counsel that this rule was violated by Respondent in connection with his representation of Gladden because, through his deliberate and wrongful refusal to file an appeal, Gladden's right to appellate review was obstructed. As a result of Respondent's dereliction, the trial court had to "review defense and government pleadings, schedule and hold a hearing, and issue an opinion," none of which would have been necessary but for Respondent's intentional failure to note an appeal. (Bar Counsel Br. 17)

Likewise, because of his deliberate failure to file an appeal and a motion to modify the Superior Court's sentence on behalf of Brown, Respondent's client was forced to file in his own behalf "an ineffective assistance of counsel" motion, a motion to "vacate set aside sentence," and a motion to have his "sentence run concurrent with his federal sentence." As of the date of the hearing, the Superior Court had not ruled on any of his motions. (Tr. 41–42)

Again, as was true in the Gladden matter, the Court will unnecessarily be burdened with these motions as a result of Respondent's unethical conduct.

The District of Columbia Court of Appeals recently set forth the criteria which must be met in order for a lawyer's conduct to be prejudicial to the administration of justice. *In re Hopkins*, 677 A.2d 55 (D.C.1996).

First, of course the conduct must be improper. That is, the attorney must either take improper action or fail to take action when, under the circumstances, he or she should act. *See, e.g., [In re] Reback . . . ,* 487 A.2d [235] at 239 [(D.C.1985)] (improp-

er action); [In Matter of] Jones[,] ... 521 A.2d [1119] at 1121 [(D.C.1986)] (failure to act). This conduct may be improper, for example, because it violates a specific statute, court rule or procedure, or other disciplinary rule, but, as here, it may be improper simply because, considering all the circumstances in a given situation, the attorney should know that he or she would reasonably be expected to act in such a way as to avert any serious interference with the administration of justice. Second, as explained in *Shorter* and clarified in *L.R.*, the conduct itself must bear directly on the judicial process (*i.e.*, the "administration of justice") with respect to an identifiable case or tribunal. This of course will very likely be the case where the attorney is acting either as an attorney or in a capacity ordinarily associated with the practice of law. And third, the attorney's conduct must taint the judicial process in more than a *de minimis* way; that is, at least potentially impact upon the process to a serious and adverse degree. *Id.* at 61

The facts of this case are undisputed. First, Respondent's conduct was improper. Second, his conduct bore directly on the administrative process. And, third, the judicial process was tainted in more than a *de minimis* way.

Accordingly, we conclude that Respondent's violations of Rule 8.4(d) in connection with the representation of both of his clients were established by clear and convincing evidence.

### Sanction

As noted above, Respondent presented no evidence in mitigation, whereas Bar Counsel referred to three previous informal admonitions "in similar cases," and Respondent's "attitude" as being aggravating circumstances. The informal admonitions were issued in 1981, 1985, and 1992. The first stemmed from violations of DR 6–103(A)(3)(neglect of a legal matter), and DR 9–102(B)(4)(failure to promptly deliver properties to client). The second and third admonitions stemmed from Respondent's neglect of clients.

Taking into consideration the seriousness of Respondent's offenses and his past disciplinary record, the Board agrees with Bar Counsel that a suspension of 60 days would be warranted. Such a sanction is supported by decisions of the District of Columbia Court of Appeals. *See, e.g., In re Santana*, 583 A.2d 1011 (D.C.1990); *In re Dory*, 552 A.2d 518 (D.C.1989); *In re Landesberg*, 518 A.2d 96 (1986); and *In re Stanton*, 470 A.2d 281 (1983).

There is presently pending before the District of Columbia Court of Appeals an earlier matter involving Respondent, in which the Board recommended that Respondent be suspended for one year, with a fitness requirement. *In re Drew*, Bar Docket No. 39–96 (BPR May 28, 1996). Should the Court concur with the Board's recommendation in that matter, it is further recommended that the 60–day suspension in the matter here under consideration run consecutively with the one-year suspension.

### Recommendation

It is the recommendation of the Board that the District of Columbia Court of Appeals issue an order suspending Respondent for a period of sixty days, and further ordering that such period of suspension run consecutively with any period of suspension ordered by the Court in Bar Docket No. 39–96.

Respectfully submitted,

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ _____

James C. McKay

Dated: November 18, 1996

All members of the Board on Professional Responsibility concur with this opinion and recommendation, except Mr. Rezneck, who did not participate.