**In re Robert W. MANCE, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 285379).**

**No. 04–BG–860.**

District of Columbia Court of Appeals.

Submitted Feb. 15, 2005.

Decided Feb. 24, 2005.

340 ■ ▬▬▬▬▬

Before: FARRELL and GLICKMAN, Associate Judges, and FERREN, Senior Judge.

PER CURIAM:

■ The Board on Professional Responsibility, in agreement with the Hearing Committee, has found that respondent, Robert W. Mance, neglected his client and committed other ethical violations in handling a criminal appeal. The Board's findings are supported by substantial evidence in the record, *see* D.C. Bar R. XI, § 9(g)(1), and, indeed, there is no dispute as to the material facts. In short, after his client was convicted in Superior Court of aggravated assault while armed, mayhem while armed, and associated weapons offenses and sentenced to consecutive prison terms totaling thirty years to life, respondent jeopardized his client's rights by filing an untimely notice of appeal. Although respondent was notified of his mistake—first by the government in its appellate brief and thereafter by this court in an order to show cause why the appeal should not be dismissed for lack of jurisdiction—he failed to seek available relief to protect his client's rights.[1] Additionally, although his client was entitled to have his sentence reduced because some of the offenses of which he was convicted merged, respondent neglected to pursue that relief. Respondent also failed to communicate with his client about his appeal, disregarded inquiries and directives from this court concerning his client's complaints and requests for new counsel, and delayed moving to withdraw from the case after learning that his client had sought to terminate his engagement and had filed a bar complaint against him. Based on these admitted facts, the Board concluded that respondent violated D.C. Rules of Professional Conduct 1.1(a) and (b) (competent representation), 1.3(a) and (b) (zealous representation and neglect ripening into intentional violation),[2] 1.4(a) (commu-

1. After respondent ignored the show cause order, this court dismissed the appeal but directed the Clerk to transmit a copy of the notice of appeal to the Superior Court to be filed as a motion for extension of time pursuant to former D.C.App. R. 4(b)(3). The Superior Court granted the extension and respondent then timely filed a new notice of appeal.

2. As the Board explains in its report, while the "hallmark" of a Rule 1.3(b) violation is that the neglect was intentional, the Rule does not require proof of intent "in the usual sense of the word." Rather, "[n]eglect ripens into an intentional violation when the lawyer is aware of his neglect of the client matter." *In re Lewis*, 689 A.2d 561, 564 (D.C.1997) (per

nication with the client), 1.16(a)(3) (mandatory withdrawal upon discharge), and 8.4(d) (serious interference with the administration of justice). The violations are not contested.

In making its recommendation as to the appropriate sanction to be imposed on respondent, the Board has considered a number of relevant factors, including the nature of respondent's misconduct,[3] the sanctions imposed in comparable cases,[4] respondent's history of prior discipline,[5] the degree to which respondent's client was prejudiced by his neglectfulness,[6] respondent's attitude,[7] and circumstances in

mitigation.[8] Weighing these factors, the Board has concluded that a thirty-day suspension from the practice of law is appropriate in this case.

The Board also deems it appropriate to stay the imposition of the suspension in favor of placing respondent on probation. *See* D.C. Bar R. XI, § 3(a)(7) (probation for up to three years "may be imposed in lieu of or in addition to any other disciplinary sanction"). The Board reasons that probation has been employed not only in cases of attorney disability,[9] but also where the neglect at issue result-

curiam) (appending Board Report). Respondent's failure to protect his client's appeal rights ripened into an intentional violation within the meaning of Rule 1.3(b) once he received notice that the appeal was not timely taken yet did nothing to address the problem.

3. While the Board considered respondent's misconduct to be serious and even somewhat aggravated in that it violated a number of distinct Rules, the Board also took into account that the misconduct concerned only one client matter and did not evince dishonesty.

4. The Board found respondent's violations to be most comparable to the violations that resulted in thirty-day suspensions in such cases as *Lewis*, 689 A.2d 561 (D.C.1997); *In re Dunietz*, 687 A.2d 206 (D.C.1996); and *In re Sumner*, 665 A.2d 986 (D.C.1995) (per curiam). The Board found that harsher sanctions (*i.e.*, longer periods of suspension or disbarment) tended to be reserved for misconduct involving neglect of more than one client and/or dishonesty or other especially aggravating features, *see, e.g., In re Foster*, 699 A.2d 1110 (D.C.1997), while the lesser penalty of public censure was "only appropriate in cases involving failure to make filings in court and to comply with court orders when the respondents had no prior discipline and 'there are not other substantial or intentional violations in the course of the misconduct' [quoting the Board's report in *Sumner*, 665 A.2d at 990]." *See, e.g., In re Hill*, 619 A.2d 936 (D.C.1993) (per curiam).

5. On two occasions, respondent had received informal admonitions for violating Rule 1.5(b)

by accepting engagements without providing his clients with a written description of the basis or rate of his legal fees. The Board concluded that this disciplinary history was not a significant aggravating factor.

6. Although respondent's client ultimately did not lose his right to appeal his criminal convictions, the right was in jeopardy and the client suffered unnecessary delay and anxiety.

7. The Board accepted the findings of the Hearing Committee that respondent was "honest and repentant" and that his "handling of this case was an aberration, far removed from the representation respondent usually provides his clients and expects of himself."

8. The Board deemed it appropriate to consider in mitigation the fact that respondent "is a well-respected member of the Bar who has a long history of service to the community in affording quality representation for criminal defendants."

9. At one time, probation was imposed in this jurisdiction "only where the respondent's misconduct was influenced by some remediable disability" such as mental illness. *In re Bradbury*, 608 A.2d 1218, 1219 (D.C.1992). *See, e.g., Dunietz*, 687 A.2d at 212–13 (finding respondent's misconduct to have been caused by his depression, which was being treated successfully). Probation is not, however, precluded in non-disability cases. *Bradbury*, 608 A.2d at 1219 n. 2.

ed from "some systemic problem in a respondent's practice which could effectively be addressed by conditions requiring remedial measures." *See, e.g., In re Stow,* 633 A.2d 782 (D.C.1993) (per curiam) (finding probation with oversight by a practice monitor to be an appropriate sanction for an attorney whose neglect was an outgrowth of the extremely disorganized, haphazard way in which he ran his high-volume criminal defense practice). Attributing respondent's violations to his "overwhelming case load at the time of the events at issue," and taking into account respondent's "excellent reputation" and "lengthy history" as a criminal practitioner and the absence of any prior similar discipline in his record, the Board believes it would be proper "to assure the protection of the public by addressing specifically the circumstances which brought about the misconduct through probationary conditions." *Dunietz,* 687 A.2d at 212. Bolstering that assessment, the Board invokes the principle that a sanction should be designed to protect the courts, the public, and the legal profession "not only" from a respondent's misconduct but also from "any unnecessary damage that may be caused by removing an otherwise valuable member of the bar from practice." [10] It would serve that goal, in the Board's opinion, to stay respondent's thirty-day suspension in favor of a remedial probationary term so that he could "continue providing much needed high quality legal representation of criminal defendants" without interruption.

Based on its finding that "[t]he events at issue were, by all accounts, an aberration,"

the Board is of the view that a period of probation terminating after one year is sufficient. The Board does not consider respondent to be in need of a practice monitor, but recommends that he be required to attend six hours of continuing legal education courses in legal ethics and law office management as a suitably remedial condition of his probation. *See, e.g., In re Joyner,* 670 A.2d 1367 (D.C.1996). The Board further recommends that respondent not be required to notify his clients of the probation. *See* D.C. Bar R. XI, § 3(a)(7). The Board proposes no other conditions except to emphasize that respondent's probation may be revoked if in the interim he is found to have committed another violation of the Rules of Professional Conduct.

As neither respondent nor Bar Counsel has filed any exception to the Board's report and recommendation, we impose the discipline proposed by the Board as a matter of course. *See* D.C. Bar R. XI, § 9(g)(2). That said, we are satisfied that the Board's findings are supported by substantial evidence in the record and that its recommended sanction would neither "foster a tendency toward inconsistent dispositions for comparable conduct" nor "otherwise be unwarranted." *Id.,* § 9(g)(1). Accordingly, it is hereby

ORDERED that respondent Robert W. Mance is suspended from the practice of law in the District of Columbia for the period of thirty days, provided that this suspension is stayed and respondent shall be on unsupervised probation for one year. Within the first six months of his

---

10. As the Board explains:

An attorney's suspension can create difficulties for the courts, the public, and other members of the legal profession, such as significant delay of pending cases and/or the transfer of such cases to other attorneys. There may be times when the needs of the court, the public, and the legal profession would be better served by allowing a respondent with a lengthy and well-reputed history of providing an important service to continue providing this service rather than [by] impos[ing] a suspension that creates unnecessary difficulties.

probation, as a condition thereof, respondent shall attend six hours of continuing legal education courses in legal ethics and law office management, as approved by Bar Counsel. Respondent shall not be required to notify clients of his probation. Upon respondent's satisfactory completion of the probation, the suspension order shall expire of its own force. Respondent shall, within thirty days from the date of this opinion, file with the Board a statement certifying that he accepts these conditions of probation, at which time his probationary period shall commence. If respondent fails to file such a statement in the thirty-day time period allotted, the stay will be lifted and respondent's thirty-day suspension shall take effect immediately without further order of this court. If, during the period of his probation, the Board finds that respondent has violated the conditions of his probation or has committed any additional violation of the Rules of Professional Conduct, the stay shall be lifted and the suspension shall take effect ten days after the Board submits its findings to this court.

*So Ordered.*