**In re Bryan A. CHAPMAN,**
**Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 439184).**

**No. 07–BG–800.**

District of Columbia Court of Appeals.

Argued Sept. 30, 2008.
Decided Feb. 5, 2009.

Judith Hetherton, Senior Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief for respondent.

Before WASHINGTON, Chief Judge, and FISHER and THOMPSON, Associate Judges.

PER CURIAM:

In this disciplinary matter, Bar Counsel challenges the sanction recommended by the Board of Professional Responsibility ("the Board") for the ethical violations committed by Respondent, Bryan Chapman. The Board, resting on its Report and Recommendation, encourages us to adopt its recommended sanction for Chapman: A thirty (30) day suspension from the practice of law stayed in favor of a one (1) year period of probation within which time Chapman must complete Continuing Legal Education ("CLE") courses in employment discrimination law, federal court procedure, and professional responsibility. Bar Counsel asserts that the Hearing Committee's ("the Committee") recommended sanction of a sixty (60) day suspension, with thirty (30) days stayed in favor of a one (1) year period of probation, is a more appropriate sanction given the aggravating factors in Chapman's case. For the following reasons, we adopt the Committee's recommended sanction.

## I.

### FACTS

Chapman pursued his work primarily as a sole practitioner. In August of 1999, Ms. Ann Bright retained him to represent her in an employment discrimination case against her employer. Due to Chapman's neglect of Ms. Bright's case, which resulted in her case being dismissed, Bar Counsel charged him on October 21, 2005, with violating three Rules of Professional Conduct ("the Rules"): Rule 1.1(a) regarding competent representation; Rule 1.1(b) regarding skill and care; and Rule 1.3(a) regarding zeal and diligence.

On April 26, 2006, after considering the evidence presented by Bar Counsel and Respondent, the Committee found that Chapman had violated all three Rules and recommended a sanction of a 60 day suspension with 30 days stayed in favor of one year probation. More importantly, for purposes of this case, the Committee found that the Respondent was a "non-credible" witness.

On July 20, 2007, in its Report and Recommendation, the Board agreed with the Committee's findings of fact and conclusions of law, but disagreed with its recommended sanction. The Board recommended a thirty (30) day suspension from the practice of law stayed in favor of a one (1) year period of probation. Respondent did not appeal from the Board's Report and Recommendation, but Bar Counsel takes exception to the Board's recommended sanction. Bar Counsel argues that the Board did not properly consider the Committee's findings because the Board declined to conclude that Respondent was intentionally and deliberately misleading in his testimony despite the Committee's finding that Respondent was a "non-credible" witness. According to Bar Counsel, a fair reading of the Committee's findings supports the harsher sanction recommended by the Committee because this court considers dishonesty before the disciplinary system to be a significant aggravating factor.

### STANDARD OF REVIEW

■ The Board exercises broad discretion in handing out discipline. *See* D.C. Bar R. XI, § 9(g)(1); *see also In re Godette*, 919 A.2d 1157, 1164 (D.C.2007); *In re Cleaver–Bascombe*, 892 A.2d 396, 402 (D.C.2006). We must adopt the recommended sanction of the Board unless to do so would foster a tendency toward inconsistent sanctions for comparable conduct or would otherwise be unwarranted. *See* D.C. Bar R. XI, § 9(g)(1); *see also Godette, supra*, 919 A.2d at 1164. "But although we must give considerable deference to the Board's recommendations in these matters, the responsibility for imposing sanctions rests with this court in the first instance." *Godette, supra*, 919 A.2d at 1164 (citations and internal quotations omitted). Hence, "the buck stops here." *Id.* (quoting *In re Shillaire*, 549 A.2d 336, 342 (D.C.1988)).

### II.

### LEGAL ANALYSIS

### A.

■ In disciplinary proceedings, we determine the proper sanction by examining the "nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public." *In re Steele*, 868 A.2d 146, 153 (D.C.2005) (citation omitted). In this case, however, the only issue in dispute before us is whether Chapman's dishonesty to Bar Counsel during its investigation and to the Committee during the hearing justifies imposing a greater sanction than that proposed by the Board.

■ Under the umbrella of aggravating and mitigating circumstances, we often factor in the respondent's veracity when assessing the appropriate sanction. *See, e.g., In re Corizzi*, 803 A.2d 438, 442–43 (D.C.2002) (indicating that dishonest conduct including false statements made to Bar Counsel during investigation was aggravating factor); *In re Boykins,* 748 A.2d 413, 414 (D.C.2000) (highlighting the absence of dishonesty as a mitigating factor); *In re Lewis,* 689 A.2d 561, 566 (D.C.1997) (noting respondent's responsiveness throughout the investigation as a mitigating factor and acknowledging the absence

of a dishonesty charge); *In re Spaulding,* BDN 338–91, Bd. Rpt. at 11 (July 12, 1993), *aff'd,* 635 A.2d 343 (D.C.1993) (recognizing respondent's candor during the proceedings as a mitigating factor). We have also expressly recognized that a respondent's "deliberately false testimony" before a Committee is "a significant aggravating factor." *Cleaver–Bascombe, supra,* 892 A.2d at 413 (remanding case to Board to determine whether respondent was dishonest or merely reckless, as it was relevant to determining an appropriate sanction). Deliberately dishonest testimony receives great weight in sanctioning determinations because a respondent's "truthfulness or mendacity while testifying on his own behalf, almost without exception, [is] probative of his attitudes toward society and prospects of rehabilitation[.]" *Id.* (citing *United States v. Grayson,* 438 U.S. 41, 50–54, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978)). "[A]n attorney who presents false testimony during disciplinary proceedings clearly does not appreciate the impropriety of his or her conduct." *Id.* at 412 (citing *In re Goffe,* 641 A.2d 458 (D.C. 1994)). And as a member of the Bar, he or she has a duty to uphold the obligation of honesty in the judicial system. *See Corizzi, supra,* 803 A.2d at 443.

In *Corizzi,* we disbarred the Respondent after he counseled two clients to lie at their respective depositions and then made false statements to Bar Counsel denying the misconduct. *Id.* at 440–43. We noted the egregiousness of Corizzi's conduct and concluded that in his lying to Bar Counsel about his misconduct, Corizzi displayed "a continuing and pervasive indifference to the obligations of honesty in the judicial system." *Id.* This court has consistently highlighted the importance of a respondent's veracity during Bar Counsel's investigation and commended those who have cooperated with candor. *See, e.g., In re Lewis,* 689 A.2d 561, 565–66 (D.C.1997) (noting respondent's "contrite and cooperative" behavior during the process as a mitigating factor); *In re Millstein,* 667 A.2d 1355, 1356 (D.C.1995) (highlighting "respondent's full cooperation with Bar Counsel's investigation" as a mitigating factor); *In re Ontell,* 593 A.2d 1038, 1042 (D.C.1991) (crediting respondent for being "candid, forthright, and cooperative with Bar Counsel's investigation"). As importantly, we have consistently chastised members of the Bar who have been less than candid in their dealings with Bar Counsel or other entities in the attorney discipline process. *See, e.g., In re Sheehy,* 454 A.2d 1360 (D.C.1983) (respondent's misrepresentations to Bar Counsel was a factor relevant in determining appropriate suspension of two years); *Goffe, supra,* 641 A.2d at 466 (respondent's decision to testify false demonstrated his failure to appreciate the impropriety of his conduct). The Bar is indeed a noble calling; and an attorney deliberately attempting to cover up misconduct is absolutely intolerable, regardless of whether it is under oath or during an investigation. *See Shillaire, supra,* 549 A.2d at 337–38 (expounding on the noble nature of the legal profession).

Bar Counsel argues that Chapman's conduct warrants a greater sanction than that recommended by the Board, primarily because Chapman made deliberately dishonest statements to Bar Counsel during its investigation and then deliberately lied to the Committee during the hearing. The Board agrees that Chapman was deliberately dishonest in his dealings with Bar Counsel but it concludes that even though Chapman's testimony before the Committee was not deemed credible,[1] there was

---

1. The Board concluded that Chapman was deliberately dishonest in the two letters he wrote to Bar Counsel in response to their investigative inquiries. In both letters, Chapman blamed his client for his delayed discov-

nothing in the Committee Report that would support a finding that his testimony was deliberately dishonest. For that reason, the Board concludes that the greater sanction recommended by the Committee is not warranted here.

While the Committee's report is susceptible to either interpretation, we need not resolve that dispute in this case because we are satisfied that Chapman's deliberate dishonesty in his dealings with Bar Counsel, when combined with the other aggravating factors present in this case, justifies imposing the greater sanction.

### B.

■ Generally, absent aggravating factors, a first instance of neglect of a single client matter warrants a reprimand or public censure. *See, e.g., In re Schlemmer,* 870 A.2d 76, 82 (D.C.2005) (Board reprimand); *In re Bland,* 714 A.2d 787, 788 (D.C.1998) (public censure). But in cases where there are aggravating factors or the respondent has a prior disciplinary history, a 30–day suspension has severally been imposed. *See, e.g., In re Mance,* 869 A.2d 339, 341 (D.C.2005) (30–day suspension stayed in favor of probation for neglect stemming from systematic case disorganization); *In re Ontell,* 593 A.2d 1038 (D.C.1991) (30–days for neglect in two client matters although candid with Board and clients). We have imposed greater punishment in neglect cases where there were significant aggravating factors—such as deliberate dishonesty, a pattern of neglect, or an extensive disciplinary history. *See, e.g., In re Schneider,* 951 A.2d 798, 799 (D.C.2008) (disbarred for neglecting client matter, misrepresenting case status to client, and paying client out of personal funds); *In re Outlaw,* 917 A.2d 684 (D.C. 2007) (60–day suspension where attorney

lied to client about claim after allowing statute of limitations to lapse and did not accept responsibility); *In re Steinberg,* 878 A.2d 496, 497 (D.C.2005) (60–days for neglect where attorney had three prior 30–day suspensions); *In re Drew,* 693 A.2d 1127 (D.C.1997) (60–days for neglecting 2 cases with a disciplinary record of 3 informal admonitions); *In re Chisholm,* 679 A.2d 495 (D.C.1996) (6–month suspension for protracted and continuing dishonesty in neglect matter); *In re Fogel,* 422 A.2d 966 (D.C.1980) (one-year and a day suspension where respondent was deliberately dishonest with Bar Counsel and in his hearing testimony).

In deciding on an appropriate sanction for Chapman's misconduct, the Board looked to and relied primarily on our opinion in *In re Spaulding, supra.* Like Chapman, Spaulding like Chapman had neglected to conduct discovery in a federal employment case and as a result the case was dismissed. Spaulding did not immediately advise his client that the case had been dismissed. *See In re Spaulding,* BDN 338–91, Bd. Rpt. at 11 (July 12, 1993). It was not until after the reviewing court had affirmed the trial court's decision that Spaulding informed his client about the status of the case. Thereafter, Spaulding misrepresented to his client that the case had been alive up until that point. *Id.* In that case, we adopted the Board's recommended sanction, a 30–day suspension stayed in favor of one year probation. We based our sanction decision on the nature of the violations, the fact that Spaulding only had a minor disciplinary history and the fact that he was candid and contrite throughout his disciplinary proceeding. *Id.*

■ Like Spaulding, Chapman neglected a single matter, causing significant

---

ery response alleging different reasons for his untimeliness. The Board also found that Chapman's testimony before the Committee was "not credible" and "possibly untruthful,"

but concluded that the Committee never explicitly found that he deliberately testified falsely.

prejudice to his client. Chapman also has no prior disciplinary history, much like Spaulding. However, unlike Spaulding, Chapman was found to be deliberately dishonest in his dealings with Bar Counsel and not credible in his testimony before the Committee. Furthermore, unlike Spaulding, Chapman refused to take responsibility or show any remorse for his misconduct. In our opinion, Chapman's deliberate dishonesty in his dealings with Bar Counsel, in conjunction with his lack of remorse for the harm he caused Ms. Bright, is what distinguishes this case from *Spaulding* and justifies imposing a harsher sanction here. "[H]onesty continues to be an indispensable component of our judicial system" and an essential characteristic of an attorney fit to practice in our society. *See Corizzi, supra,* 803 A.2d at 442 (citation omitted).

A sanction harsher than the 30–day suspension recommended by the Board is also consistent with our prior decisions. For instance, in *Fogel,* the respondent's neglect of a single matter, his prior disciplinary history, and his deliberate dishonesty with his client, the Committee, and this court, earned him a suspension of a year and a day. *See Fogel, supra,* 422 A.2d at 967–68. And in *Sheehy,* the respondent was suspended two-years for "serious neglect" in a single matter where he misrepresented to his client a settlement offer that he was paying from his own funds and he made "an intentional and calculated attempt to mislead Bar Counsel." *Sheehy, supra,* 454 A.2d at 1362, 1365. However, the respondent there, at least, admitted to his misconduct. *Id.* at 1362.

### III.

### CONCLUSION

Therefore, considering the range of sanctions for single neglect matters involving deliberate dishonesty with the disciplinary system's investigative or hearing process, we believe a sixty (60) day suspension, with thirty (30) days stayed in favor of a one (1) year period of probation with conditions, is an appropriate sanction here, particularly in light of Chapman's lack of candor at the hearing, his lack of remorse, and the prejudice he caused his client balanced against his minor disciplinary history.

Therefore, it is

ORDERED that Bryan A. Chapman is hereby suspended from the practice of law in the District of Columbia for a period of sixty (60) days, with thirty (30) days stayed, in favor of one (1) year probation within which time Chapman must complete CLE courses in employment discrimination law, federal court procedure, and professional responsibility.

*So ordered.*