*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-BG-0700

IN RE JOSEPH OWENS, RESPONDENT,

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 980884)

On Report and Recommendation
Of the Board on Professional Responsibility

(BDN: 21-BD-058; DDN: 2018-D041)

(Argued May 13, 2025                    Decided August 28, 2025)

*William C. Brennan, Jr.*, with whom *Michael E. Lawlor* was on the brief, for respondent.

*Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, *Julia L. Porter*, Deputy Disciplinary Counsel, and *Jelani Lowery*, Assistant Disciplinary Counsel, were on the brief, for Disciplinary Counsel.

Before BECKWITH, EASTERLY, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Disciplinary counsel charged respondent Joseph Owens with numerous ethical violations including misappropriation of client funds. The case involves a somewhat complicated choice-of-law question that we detail below, but it is not terribly relevant to the bottom-line dispute about whether Owens

committed intentional misappropriation. Both the Hearing Committee and the Board on Professional Responsibility concluded that Owens had intentionally misappropriated client funds no matter which jurisdiction's rules of professional conduct applied to Owens's misconduct. Consistent with the usual sanction for intentional misappropriation, both the Committee and the Board recommend that we disbar Owens. Owens objects to that recommendation in numerous respects, principally arguing that he did not commit intentional misappropriation.

We agree that Owens committed intentional misappropriation no matter which jurisdiction's rules apply—with Virginia's and Maryland's as the only viable candidates—and disbar Owens from the practice of law.

## I. Factual and Procedural Background

Disciplinary counsel charged Joseph Owens with multiple ethical violations for alleged misconduct stemming from his agreement to represent Yuri Joselson at a security clearance hearing before the Defense Office of Hearings and Appeals (DOHA), an arm of the Department of Defense. Because Disciplinary Counsel was of the mistaken impression that this hearing would be before a tribunal sitting in the District, it originally charged Owens with violations of the District's Rules of Professional Conduct for the misconduct related to that DOHA hearing. Specifically, Owens was charged with failing to comply with reasonable requests

for information and to keep a client reasonably informed in violation of Rule 1.4(a), misappropriating client funds and failing to keep records of client funds in violation of Rule 1.15(a), failing to provide an accounting in violation of Rule 1.15(c), and failing to turn over a client file and to refund an unearned fee in violation of Rule 1.16(d), in relation to that DOHA proceeding. Owens was also charged under the Maryland rules with dishonesty in connection with his conduct before two Maryland courts after Joselson terminated the representation early and sued for a full refund. *See* Maryland Rule 19-308.4(c) (dishonesty and misrepresentation).

The Hearing Committee, and later the Board, determined that Virginia's Rules of Professional Conduct in fact applied to the first set of charges because DOHA—which holds hearings at sites around the country—was expected to and ultimately did hold the hearing in Joselson's matter in Arlington, Virginia. Both the Committee and the Board then concluded that Owens committed intentional misappropriation, failure to provide an accounting, and recordkeeping violations under Virginia Rules 1.15(b)(3) & (b)(5). They also found that Owens violated Virginia Rule 1.4(a) (failing to keep his client informed), and Maryland Rule 19-308.4(c) owing to his dishonesty in the Maryland proceedings. Both bodies recommend that we disbar Owens, principally for his intentional misappropriation.

Because we ultimately agree that Owens committed intentional misappropriation, and disbarment is the near-automatic sanction for that conduct absent extraordinary circumstances that are not present here, we will stick to the facts and disputes surrounding that charge. *In re Johnson*, 321 A.3d 642, 646 (D.C. 2024) (per curiam) (declining to consider additional charges in light of "misappropriation requiring disbarment"); *In re Ekekwe-Kauffman*, 267 A.3d 1074, 1078 (D.C. 2022) (same).

## A. Hearing Committee's Proceedings

The following evidence was presented to the Hearing Committee with respect to the misappropriation charge.

Joselson retained Owens to represent him at a security clearance proceeding before DOHA. Their written retainer agreement provided that Joselson "will pay a fee of $4,000," elsewhere described as the "maximum attorney fee," and that fee was to "cover[] all services and expenses" of the representation, which contemplated an in-person hearing before DOHA. Joselson then paid Owens $4,000, which Owens deposited in his firm's escrow account in March 2017. In May 2017, Owens directed his law partner to withdraw Joselson's $4,000 prepaid fee with the assurance that he had earned it, despite the fact that the anticipated DOHA hearing was still several

months out and Owens had not yet rendered many of the services he had agreed to provide.

Owens's ultimate justification for that withdrawal of Joselson's entire fee was that he had already worked sixteen hours on the case, and an early termination clause in their retainer agreement guaranteed him $250 per hour worked, and $250 x 16 = $4,000. That early termination clause provides:

> In the event that the engagement is terminated by the Firm or by Client prior to the completion of the engagement, then the Firm shall provide an appropriate refund. Refund will consist of original payment minus an appropriate deduction for work performed at the hourly rate of $250 for legal services performed by coun[s]el, $100 performed by paralegals, and $30 performed by clerks and secretaries.

So while Owens still had plenty of work yet to do on the case, and the agreement had not in fact been terminated by anybody, in his view that early termination clause authorized him to withdraw the $4,000 after working sixteen hours, which he claimed to have done.

Several months later, in October 2017—still prior to the DOHA hearing—Joselson terminated the agreement and sought a full refund and accounting. Owens initially offered Joselson a $1,000 refund, but eventually agreed to refund $2,000, or half of the initial fee. Joselson was not satisfied and continued to request a full refund, eventually filing a lawsuit in Maryland to recover it. A trial was held in

Maryland to determine how much of the remaining $2,000 Owens had earned. At the trial, Owens testified that he had entered into a flat fee agreement with Joselson and that he was entitled to the full $4,000 under the early termination clause because he had worked at least sixteen hours on the case, though he conceded he had not kept any corresponding time records. Applying the termination provision, the Maryland court entered a judgment in favor of Joselson for an additional refund of $1,750, permitting Owens to retain just $250 of the initial fee for what the court assessed to be one hour of work.

## B. Hearing Committee's Findings

*Motion to Dismiss*

Owens moved to dismiss the bar proceedings, prior to any evidentiary hearing, on the ground that Disciplinary Counsel had failed to charge him under the correct jurisdiction's rules. While Disciplinary Counsel had brought the bulk of the charges under the D.C. rules, Owens argued that Maryland's rules applied since Maryland was his primary place of practice. D.C. R. Pro. Conduct 8.5(b). In the alternative, he requested that the Board amend the specification of charges to reflect that the Maryland rules applied to all of his alleged misconduct.

Disciplinary counsel conceded that it was "somewhat unclear" which jurisdiction's rules apply. Owens practiced primarily in Maryland, but the DOHA proceeding that he was retained to represent Joselson in was expected to take place in the District or Virginia so that the rules of any of the three could plausibly apply. Any imprecision in that charging decision was immaterial, in Disciplinary Counsel's view, and was no basis to dismiss the charges against Owens. If the Committee determined that Virginia or Maryland's rules applied instead of the District's, the appropriate remedy was to apply the correct jurisdiction's rules in its adjudication of the case, not to dismiss it entirely. And the rules of all three jurisdictions are virtually identical and Owens had violated the substance of each set of rules in identical respects. So, in Disciplinary Counsel's view, Owens had received clear notice of the charges against him regardless of which jurisdiction's rules the Board ultimately decided to apply.

The Committee declined to dismiss the charges but agreed to hear argument on the choice-of-law issue at the conclusion of Owens's evidentiary hearing. In its recommendation to the Board, the Committee determined that Virginia's rules applied to all but the dishonesty charge, which stemmed distinctly from Maryland court proceedings. It found that the DOHA hearing was expected to take place in Virginia and "[t]here was never any realistic possibility the hearing would occur within the physical boundaries of the District of Columbia." And because Owens's

conduct related to a DOHA hearing that was set to take place in Virginia, that matter was properly considered to be "pending before a tribunal" that "sits" in Virginia. *See* D.C. R. Pro. Conduct 8.5(b)(1) ("For conduct in connection with a matter pending before a tribunal, the rules to be applied shall be the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise."). The Committee explained that despite its view that Disciplinary Counsel had incorrectly charged Owens under the District's rules, that was a "highly formalistic" misstep that could not have hindered Owens's ability to defend against the charged misconduct, given that Owens had committed intentional misappropriation and other serious misconduct no matter which jurisdiction's rules applied, as it went on to explain.

*Intentional Misappropriation*

Despite concluding that Virginia's rules applied to all but the dishonesty charge, the Committee acknowledged some uncertainty on the matter and opted to analyze Owens's conduct under all three potential jurisdictions' rules. It concluded that Owens had intentionally misappropriated client funds no matter which rules applied. The Committee found by clear and convincing evidence that (1) the agreement between Owens and Joselson was for a flat fee, (2) the termination provision's hourly rate was triggered only upon early termination of the engagement

and did not entitle Owens to rolling compensation while the representation was ongoing, (3) Owens authorized the withdrawal of Joselson's full fee in May 2017, and (4) at the time of that withdrawal, a significant portion of the fee remained unearned.

For the first two findings, the Committee relied primarily on the plain language of the retainer agreement. By its terms, the termination provision that Owens invoked applied only "[i]n the event that the engagement is terminated . . . prior to [its] completion." The Committee put some additional weight on Owens's own admissions during the Maryland proceedings, where he characterized the agreement as being for a flat fee. For the third finding, the Committee also relied on Owens's admissions that no portion of Joselson's fee remained in the escrow account after the May 2017 withdrawal.

As for its last finding—that a significant portion of the fee remained unearned at the time it was disbursed—the Committee reasoned that Owens had not completed all (or even most) of the work contemplated by the agreement when he took the full fee. While he had spoken with Joselson on several occasions, filed an appearance, and submitted Joselson's preference that the hearing be held in Arlington, Virginia, he had not drafted or filed any substantive pleadings or prepared Joselson or any

other witnesses for the hearing.  And most notably, Owens had not yet represented Joselson at the security clearance hearing itself, as the agreement directed.

Owens's primary defense was that he had worked at least sixteen hours on the case which, if billed at the $250 hourly rate contemplated in the termination clause, meant he was due the full $4,000.  He had thus earned his full fee by the time it was withdrawn, in his view.  The Committee found his claim about the hours he had worked to be both irrelevant to the charged misappropriation and non-credible.  First, the Committee reasoned that whether Owens had worked sixteen hours had no bearing on what portion of the fee he had earned by May 2017.  This was because the termination provision applied only in the event the representation was actually terminated, which had not happened yet in May 2017.  So, the Committee reasoned, there was no possibility that Owens had earned the full fee before taking it because he had not performed all of the legal services contemplated by the agreement.  Second, the Committee did not credit Owens's claim that he had worked sixteen hours by May 2017.  Owens admitted that he did not keep any time records in the case, and his representations to the Hearing Committee concerning his sixteen billable hours were contradicted by his prior admissions that much of the work he factored into his sixteen-hour estimate was not work he would have billed for.

*Sanction*

The Committee then proceeded to its sanction analysis, which required it to determine whether Owens's misappropriation was negligent, reckless, or intentional. *See In re Gray*, 224 A.3d 1222, 1224 (D.C. 2020) (per curiam) (describing the different consequences for misappropriation depending on mens rea). It determined that Owens had committed intentional misappropriation because his professed belief that the termination provision entitled him to the full fee in May 2017 was "directly contradicted by [his] own sworn testimony before the Maryland courts," his failure to track his hours, and the clear terms of the retainer agreement. The Hearing Committee recommended disbarment given Owens's intentional misappropriation.

**C. The Board's Report and Recommendation**

The Board agreed with the Committee that Virginia's rules of professional conduct applied to the misappropriation charge. It also adopted the Committee's pertinent findings of fact with respect to the misappropriation matter and concluded that Owens had violated Virginia Rule 1.15(b)(5) by intentionally misappropriating client funds. The Board likewise recommends that we disbar Owens.

The Board also rejected Owens's arguments that Disciplinary Counsel's failure to charge him under the applicable rules was grounds for dismissal. It

determined that, contrary to Owens's assertions, it had authority to discipline him even though his misconduct had occurred outside the District because he was a member of the D.C. Bar. It further found that Owens was "on notice before, during, and shortly after the [Committee] hearing that the Virginia Rules may apply," and had not shown any prejudice he suffered as a result of Disciplinary Counsel's failure to cite Virginia's Rules in the specification of charges.

Owens takes various exceptions to the Board's recommendation of disbarment, which we now consider.

## II. Analysis

Owens argues before this court that we should dismiss this matter and refer it to Maryland for adjudication because he practices almost exclusively in Maryland and none of the alleged misconduct occurred in the District. If we proceed to the merits, he argues that the Board erred in applying the rules of Virginia rather than Maryland with respect to the DOHA proceedings, and that under Maryland's rules (1) he did not commit misappropriation as he had earned Joselson's full fee by the time it was removed from the escrow account, and (2) disbarment is unwarranted because any misappropriation of client funds was at most negligent since he had a good faith belief that he was entitled to the misappropriated funds. We consider those arguments in turn.

**A. We have no basis to defer to Maryland's disciplinary decisions here**

Owens first argues that we should not pursue this case further because he practices principally in Maryland and, despite Joselson lodging a complaint with the Maryland Attorney Grievance Commission, Maryland authorities did not charge Owens with any misconduct. So at least as a prudential matter, Owens argues that we should defer to Maryland's decision not to pursue disciplinary charges against him and do likewise ourselves. We disagree.

This court and its disciplinary arm are charged with policing the District's bar, regardless of what choices neighboring jurisdictions have made on the matter. Our rules of professional conduct explicitly subject any lawyer "admitted to practice in [the District] . . . to the disciplinary authority of [the District], *regardless of where the lawyer's conduct occurs*." D.C. R. Pro. Conduct 8.5(a) (emphasis added); *see also In re Winstead*, 69 A.3d 390, 395-96 & n.5 (D.C. 2013) (rejecting argument that we lack authority to discipline a member of the D.C. Bar for their out-of-District conduct). And for good reason: The District has a strong interest in maintaining the fitness and professionalism of those licensed to practice law in its courts. That interest is not diminished simply because an attorney's fitness is called into question by misconduct that occurs elsewhere. Owens is a member of the D.C. Bar and by that fact alone, he is subject to our disciplinary authority. And we have a strong

interest in keeping attorneys who have committed intentional misappropriation out of our bar, wherever their principal place of practice is.[1]

## B. Owens misappropriated client funds

Moving to the merits, Disciplinary Counsel bears the burden of proving rules violations by clear and convincing evidence. *In re Dobbie*, 305 A.3d 780, 792 (D.C. 2023). We defer to the Board's findings of fact so long as they are supported by substantial evidence, and we generally decide de novo whether a given set of facts establishes intentional or reckless—rather than merely negligent—misappropriation. *Johnson*, 321 A.3d at 648-49. *But see In re Krame*, 284 A.3d 745, 754 (D.C. 2022) (explaining that "although a respondent's state of mind might be an ultimate fact that is reviewed de novo, a Hearing Committee's credibility findings can still constrain the determination of ultimate fact"). The Board's proposed sanction carries "a strong presumption in favor of its imposition" unless it is "unwarranted" or would "foster a tendency toward inconsistent dispositions for comparable conduct."

---

[1] In a cursory footnote and without citation to any legal authority, Owens also claims that he "cannot be disciplined for conduct that he was not charged with." To the extent this brief assertion is an argument that Disciplinary Counsel's initial charging decision locks us into whichever jurisdiction's rules a respondent is originally charged under, we see no basis for that assertion where a respondent has adequate notice of the charged underlying misconduct (as Owens undoubtedly did here).

*Dobbie*, 305 A.3d at 792-93 (first quoting *In re McClure*, 144 A.3d 570, 572 (D.C. 2016) (per curiam); and then quoting D.C. Bar R. XI, § 9(h)(1)).

While we tentatively agree with the Committee and Board that Virginia's rules apply to the DOHA-related misconduct, we echo their view that it is ultimately immaterial whether Virginia's or Maryland's rules—the only potential candidates that any party advances—apply.[2] That choice turns on whether at the time of the alleged misappropriation, the anticipated DOHA hearing counted as a "matter pending before a tribunal" that "sits" in Virginia for purposes of Rule 8.5(b). *See* D.C. R. Pro. Conduct 8.5(b) (if the alleged misconduct occurred "in connection with a matter pending before a tribunal . . . the rules of the jurisdiction in which [that] tribunal sits" apply, but if there is no such pending matter, the applicable rules are those of "the admitting jurisdiction in which the lawyer principally practices[] provided" the particular conduct did not have its "predominant effect in another jurisdiction in which the lawyer is licensed to practice"). We decline to wade into that question because we find that substantial evidence supported the Board's findings that Owens committed intentional misappropriation under either

---

[2] Though Disciplinary Counsel initially charged Owens under the D.C. rules, that was based on a mistaken factual understanding of where DOHA sits. With that misunderstanding corrected, nobody suggests the District's rules apply to the misconduct related to the DOHA hearing.

jurisdiction's rules. We will therefore begin by examining Virginia's rules, and why Owens's conduct constituted misappropriation under them; and in a moment, we will explain why his conduct is also misappropriation under Maryland's rules (as the Committee and Board likewise reasoned).

At the time of Owens's alleged misconduct, Virginia Rule 1.15(a)(1) (2013) provided that:

> All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

Virginia Rule 1.15(b)(5) (2013) further directed attorneys to:

> not disburse funds or use property of a client or third party without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

Owens does not dispute that he authorized his law partner to withdraw Joselson's full fee from the firm's trust account before his representation was complete. Instead, he argues that the withdrawn fee was earned under the terms of the termination provision because by that point he had completed at least sixteen hours of work on Joselson's case.

We disagree. Whether or not Owens performed sixteen billable hours of work on Joselson's case, Owens had not earned the $4,000 fee because he had yet to perform a significant portion of the contemplated work so that this flat fee had not yet been earned. Contrary to some of Owens's contentions through these disciplinary proceedings, the retainer agreement clearly set out a flat fee—its plain terms established that "Client will pay a fee of $4,000.00 . . . cover[ing] all services and expenses of the Firm working on Client's behalf." And under Virginia law, flat fees advanced to an attorney "remain the property of the client"—and thus must be held in escrow—"until they are earned by the attorney." *See* Virginia Legal Ethics Opinion 1606, approved 2016. Unless there is an agreement that says otherwise, "none of the flat fee is earned until the matter is concluded." Virginia Legal Ethics Opinion 1899, approved 2023 (describing longstanding Virginia law). While Virginia's rules allow an attorney to withdraw portions of a client's advanced fees under certain circumstances, including with the express consent of the client, "upon an accounting to the client," or "when other fees/costs or expenses are agreed upon in advance," none of those circumstances applied here. Va. Rule 1.15 cmt. 2a. At the time he took the full fee, Owens had not obtained Joselson's consent, provided an accounting, or met any agreed-upon milestones warranting partial payment, nor had the matter concluded. We therefore have little trouble finding that Owens had not earned that flat fee because he had not performed substantial portions of the

agreed-upon representation, let alone done enough so that "the matter [was] concluded." Virginia Legal Ethics Opinion 1899, approved 2023.

Owens offers four counterpoints, but none is persuasive.

First, Owens argues that the Board erred in applying Virginia's rules to the Joselson charges when it should have applied Maryland's rules. As we previewed, it is unnecessary to reach the substance of this thorny issue because Owens does not show that he suffered any prejudice as a result of the Board's decision to apply Virginia's rules. *In re Bernstein*, 774 A.2d 309, 315-16 (D.C. 2001) (declining to resolve choice-of-law debate where respondent "has not shown . . . that if the [other jurisdiction's] rules had been applied, the result would have been more favorable to him"). That is, we do not discern any material difference, and Owens points to none, in the two jurisdictions' approaches to when an attorney may disburse all of a client's advanced fees. Both Maryland and Virginia's rules provide that advanced legal fees, including flat fees, remain the client's property and must be held in escrow until they are earned by the attorney or the client consents to their disbursal. *Compare* Virginia Legal Ethics Opinion 1606, approved 2016 (Advanced fees "do not belong to the lawyer until the services are rendered," and so they "remain the property of the client until they are earned by the attorney."); Va. Rule 1.15(a)(1), (b)(5) (2013) (such fees must be held in an "identifiable trust account[]" and may not be "disburse[d]"

without the client's consent), *with* Md. Rule 19-301.15(c) (2016) ("Unless the client gives informed consent, confirmed in writing, to a different arrangement," attorneys "shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.").

Maryland's precedents are just as clear as Virginia's that "the full flat fee is not earned until all the work associated with the fee is completed." *Att'y Grievance Comm'n of Md. v. Hamilton*, 118 A.3d 958, 973 (Md. 2015) (quoting *Att'y Grievance Comm'n of Md. v. Zuckerman*, 872 A.2d 693, 704 (Md. 2005)); *see also Att'y Grievance Comm'n of Md. v. Smith*, 177 A.3d 640, 664 (Md. 2018) (attorney violated Md. Rule 19-301.15 when he withdrew client's funds from trust account even though the post-conviction petition he agreed to draft had not been filed, and "therefore, the fees had not been fully earned").  Here, there is no dispute that Owens had yet to perform all the work contemplated by his agreement with Joselson when he took all of the fee.  Rather, his core contention as to prejudice is that recent developments in Maryland's jurisprudence rendered disbarment unlikely in his case. *See Att'y Grievance Comm'n of Md. v. Collins*, 270 A.3d 917, 945-46 (Md. 2022) (abrogating past cases and holding that disbarment is no longer the exclusive sanction for misconduct involving intentional dishonesty that is not "theft, fraud, harm to a client or third party, or the intentional misappropriation of funds").  But

even if Owens's characterization of Maryland law is correct, it is of no moment. We apply our own law to sanctions determinations even when another jurisdiction's rules establish the underlying violation, so whether Maryland would have imposed a lesser sanction in this instance is irrelevant. *In re Tun*, 286 A.3d 538, 543 (D.C. 2022) ("[A]lthough we are evaluating misconduct under the rules of another jurisdiction, we make sanctions determinations pursuant to District of Columbia law.").

Second, Owens argues that he was permitted to take the full fee under the termination provision, which explained how Joselson's fee would be calculated if the representation was prematurely terminated—that is, at an hourly rate of $250. But that termination provision was contingent on just that: a *termination* which had not yet occurred when Owens took his fee. The termination provision's hourly rate expressly applied only "in the event" that either party withdrew from the agreement before its completion. Owens took the full fee five months before Joselson terminated the engagement. At that time, the representation was still ongoing and so the termination provision's hourly rate had not been triggered. Contrary to Owens's assertion, the provision did not allow him to earn the fee in hourly installments over the course of the representation.

Third, Owens points to the Hearing Committee's finding—in the part of its report that considered whether Owens had refused to refund an unearned fee after Joselson terminated the representation—that it lacked "clear and convincing evidence that the fee was unearned." Owens argues that this finding is inconsistent with and thus precludes the Committee's separate conclusion that he committed misappropriation by disbursing an unearned fee. He's wrong about that. It is true that the Committee found there was insufficient evidence to establish that Owens owed and failed to provide a refund to Joselson *after* Joselson terminated their agreement. But that in no way undercuts the finding that he took those funds prematurely, and thereby misappropriated them. The failure-to-refund finding implicates an entirely different time period. It required the Committee to determine whether, after Joselson terminated the representation—at which point Owens could have withheld some fees on an hourly basis—Owens had refused to refund any amounts beyond the $250 per hour he was due. That task was complicated by the fact that Owens had not kept any billing records, and the Committee could not confidently say how many hours he had worked. Whereas the misappropriation charge did not depend on any similarly uncertain facts—the Committee instead had to find only that Owens had not earned his full fee when he withdrew it in May 2017, and it unequivocally and with substantial support in the evidence found that he committed such a misappropriation.

Fourth and finally, Owens argues that assuming he had engaged in misappropriation by withdrawing his full fee, our precedents had not made that clear until *In re Alexei*, 319 A.3d 404 (D.C. 2024), well after he withdrew that fee. So he argues that we should apply that new rule only prospectively, as we did in *Alexei*, and not discipline Owens for violation of what was an at-the-time uncertain rule. *Id.* at 415. But Owens does not point to any similar uncertainty in Maryland's or Virginia's precedents and, as we explained above, *see supra* note 2, the District's rules are inapplicable here, and so any ambiguity under our law is irrelevant.

But even under our rules, Owens is simply wrong that there was any unclarity in our law that his conduct constituted misappropriation. It has been our law since 2009 that an attorney cannot withdraw the entirety of a flat fee until the entirety of the contemplated work has been performed. *See In re Mance*, 980 A.2d 1196, 1202 (D.C. 2009) ("Such a fee is earned 'only to the degree that the attorney actually performs the agreed-upon services.'" (quoting Alec Rothrock, *The Forgotten Flat Fee; Whose Money Is It and Where Should It Be Deposited?*, 1 Fla. Coastal L.J. 293, 347 (1999))). *Alexei* involved the more nuanced question of whether an attorney misappropriates funds when they withdraw *any* portion of a flat fee, in proportion to the amount of the contemplated work that had been performed, prior to all services being rendered. We held in *Alexei* that taking any portion of the flat fee was indeed misappropriation, but reasoned that was not entirely clear from *Mance* itself so we

opted to apply that rule only prospectively. *Alexei*, 319 A.3d at 415. *Alexei* is of no help to Owens because he did not take some portion of Joselson's $4,000 fee that was roughly proportionate to the percentage of the representation that he had completed—he took it all, despite the vast bulk of the agreed-to work still yet to be done. So whatever uncertainties remained after *Mance* and were later clarified in *Alexei*, they do not impact our analysis here: Taking the full flat fee prior to completion of the contemplated representation is clear as day misappropriation, and *Mance* made that clear.

## C. Disbarment is warranted

In determining the appropriate sanction, we apply the District's law regardless of which jurisdiction's substantive rules established the underlying misconduct. *Tun*, 286 A.3d at 543. Under our law, the appropriate sanction for an attorney guilty of misappropriating client funds turns on their level of culpability. While an attorney who acted only negligently may receive a lesser sanction, the intentional or reckless misappropriation of client funds will "trigger[] the virtually automatic sanction of disbarment" absent "extraordinary" mitigating circumstances. *Gray*, 224 A.3d at 1224-25; *see also In re Addams*, 579 A.2d 190, 191 (D.C. 1990) (en banc) (affirming that "in virtually all cases of misappropriation, disbarment will be the only

appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence").

We agree with the Board that Owens's misconduct warrants disbarment. Misappropriation is intentional or reckless, and thus triggers the presumption of disbarment, when an attorney treats a client's funds as their own, which Owens did when he used the advanced fee to pay a personal credit card bill belonging to him or his wife. *See In re Anderson*, 778 A.2d 330, 339 (D.C. 2001) (such misappropriation occurs when an attorney's unauthorized use of client funds occurs "in a way that reveals either an intent to treat the funds as the attorney's own or a conscious indifference to the consequences of his behavior for the security of the funds."). Owens offers two reasons we should impose a lesser sanction, but neither changes our bottom line.

First, Owens takes exception to the Board's finding that his misappropriation was intentional. He argues his actions were at most negligent because he believed in good faith that he had earned the full fee and was entitled to withdraw it under the terms of the contract. It is true that in some instances, an attorney may commit negligent misappropriation when they act on an "objectively reasonable," honestly held, but ultimately erroneous belief that they were entitled to the misappropriated funds. *Gray*, 224 A.3d at 1233. But the Board found, and we agree, that Owens's

purported belief that he had earned the full fee in May 2017 was neither reasonable nor in good faith. As we explained earlier, the agreement between Owens and Joselson clearly embodied a flat fee arrangement. Owens's contention that he understood the contract to say otherwise and establish an hourly rate is not only unreasonable but belied by his past statements as well as his conduct over the course of the representation. Owens repeatedly referred to the agreement as a flat fee agreement when he testified in the Maryland trial and never departed from this view until it became convenient to do so in response to the current charges. Nor did Owens conduct his affairs as one might expect him to if he actually understood an hourly rate to apply. For example, Owens never tracked his hours on the matter, conceded that he did not know how to conduct hourly billing, and has been inconsistent about what work on Joselson's behalf he considers part of the sixteen billable hours that supposedly earned him the full fee.

Second, Owens urges us to exercise our discretion to impose a lesser sanction. For this, he mostly cites Maryland case law that does not apply to our sanction analysis. *See Tun*, 286 A.3d at 543. But aside from arguing that his misrepresentation was merely negligent, Owens does not point to any extraordinary circumstances that might rebut the presumption of disbarment. *See Gray*, 224 A.3d at 1233 (noting it is the respondent's burden to prove extraordinary mitigating circumstances). Nor does he make a persuasive case under "the 'usual sort' of

mitigating factors, which tend not to be grounds to depart from a sanction of disbarment unless they are 'especially strong.'" *Ekekwe-Kauffman*, 267 A.3d at 1084 (quoting *Addams*, 579 A.2d at 191)). In fact, these factors, which include "(1) an admission of wrongdoing, (2) full cooperation with the disciplinary authorities, (3) prompt return of the disputed funds, and, most importantly, (4) an unblemished record of personal conduct," are largely lacking here. *In re Hewett*, 11 A.3d 279, 287 (D.C. 2011) (quoting *In re Pierson,* 690 A.2d 941, 950 (D.C. 1997)). Owens continues to insist upon an unreasonable interpretation of the contract that would have justified his conduct rather than admit wrongdoing. He was found to have provided deliberately dishonest testimony to the Committee, a "significant aggravating factor." *In re Chapman*, 962 A.2d 922, 924 (D.C. 2009) (per curiam). And it took months for Owens to return the disputed funds to Joselson, and he did so only after a court ordered him to. Over the past thirty-five years, we have found that extraordinary circumstances warranted a sanction other than disbarment only once when confronted with intentional or reckless misappropriation, and this case does not resemble it in any respect. *Hewett*, 11 A.3d at 290 (declining to disbar attorney who intentionally misappropriated client funds solely to benefit the client). In light of these considerations, we see no reason to depart from our ordinary sanction in Owens's case.

Accordingly, it is

ORDERED that respondent Joseph Owens is disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the period of Owens's disbarment shall not begin to run until such time as he files an adequate affidavit of compliance with D.C. Bar R. XI, § 14(g). *See* D.C. Bar R. XI, § 16(c).

*So ordered.*